# ATTACHMENT A:
## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR
## 8045 SHINY MEADOW LANE, CHARLOTTE, NORTH CAROLINA

1. I, M. Clint Bridges, Task Force Officer (TFO), U.S. Drug Enforcement Administration (DEA), presently assigned to Charlotte, North Carolina, being duly sworn, state:

2. I am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 8, 18, 19, 21, 31 United States Code and other related offenses.

3. I am a Detective with Gastonia Police Department and am currently assigned as a Task Force Officer with the Drug Enforcement Administration (DEA) and have been so assigned since December 2013. I have worked as a law enforcement officer since 2002 and have been employed with the Gastonia Police Department for since 2007. During my tenure at the Gastonia Police Department, I have been assigned to the special investigations division, street crime unit, as well as the patrol division. Prior to being employed with the Gastonia Police Department, I was employed with the Shelby Police Department for over seven (7) years. During my tenure at the Shelby Police Department, I worked assignments in the narcotics/vice division, street crime unit, as well as the patrol division.

4. I attended a 500-hour basic law enforcement training program at Gaston College in 2002. I have also attended various training courses where the subject matter was the interdiction of narcotics and the detection of narcotic smuggling techniques.

5. Since December 2002, I have been involved in several investigations of individuals who derive substantial income from unlawful activities, including the importation, manufacture, cultivation, distribution, and sale of illegal controlled substances. In addition, I have experience

in the execution of search warrants and the debriefing of defendants, cooperating witnesses, informants, and other persons who have personal knowledge of the amassing, spending, converting, transporting, distributing, laundering, and concealing proceeds of unlawful activities. I am familiar with the habits and practices of persons engaged in violations of controlled substance laws, and I have more than 13 years of experience in narcotics investigations. I have actively participated in federal and state wiretap investigations, undercover drug purchases, searches and seizures, surveillances, intelligence analyses, drug reversals, conspiracy investigations, arrests, interviews and interrogations, drug interdictions, eradications, and clandestine laboratories. I have searched numerous residences and businesses for items related directly and indirectly to drug distribution. I have been tendered as an expert witness in the field of drug trafficking in federal court, in the Western District of North Carolina.

6. As a result of my personal participation in the investigation of matters referred to in this Affidavit, and based upon reports made to me by other law enforcement officials, I am familiar with the facts and circumstances of this investigation. The information contained in this Affidavit is provided for the limited purpose of establishing probable cause in support of search warrants for the above-listed real property within the Western District of North Carolina; therefore, I have not included each and every fact known to me concerning this investigation.

7. Based on my training and experience, and participation in controlled substance investigations, and financial investigations, which result from violations of narcotics laws, I know:

    a. That large scale narcotics trafficker must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing drug business.

    b. That drug traffickers very often place assets in names other than their own to avoid detection of these assets by law enforcement.

    c. That even though these assets are in other persons' names, the drug traffickers' continue to use these assets and exercise control over them.

d. That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale purchase, and distribution of controlled substances.

e. That these aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are readily available to the drug traffickers such as in their residences, places of business, and alternate storage locations (such as mini-storage facilities).

f. That it is common for large scale drug traffickers to secrete contraband, including but not limited to packaging material and other paraphernalia, in secure locations for ready access, and to conceal them from law enforcement, including in their vehicles, so they can be easily and quickly moved.

g. That persons involved in drug trafficking conceal in secure locations, with ease of access, large amounts of currency and other proceeds of drug transactions, and financial instruments and other evidence of financial transactions relating to the obtaining, transfer, secreting, and spending of drug transaction proceeds.

h. That when drug traffickers amass large amounts of money from the trafficking in illegal drugs that they attempt to hide their illegal origin. In order to accomplish this, they utilize foreign and domestic banks, cashier's checks, money drafts, real estate, and business fronts.

i. That documents relating to such attempts to hide the illegal origin of such proceeds are kept where the traffickers have ready access to them, often in their residences, places of business, and alternative storage locations, and often in close proximity to illegal drugs.

j. That it is common for drug traffickers to travel to major distribution centers and cities such as the Charlotte, North Carolina and Atlanta, Georgia areas and surrounding areas to receive and distribute drugs. That these methods of transportation include commercial airlines, commercial vessels, private aircraft, rental automobiles, private automobiles, and other such means of transportation.

k. That it is common for the drug traffickers to keep and maintain records of their travels in locations for easy access such as their residences, places of business and mini-storage facilities.

l. That drug traffickers commonly maintain addresses or telephone numbers, in books, papers, cell phones or tablets, which reflect names, addresses, and/or telephone numbers for associations in the drug trafficking organization, and keep these records in their residences, places of business and mini-storage facilities.

m.  That firearms are considered "tools of the drug trafficking trade." That is, traffickers often possess firearms to protect themselves, their drugs, and their proceeds from law enforcement, competitor drug traffickers, and would-be thieves.

n.  That the drug traffickers take or cause to be taken photographs of them, their associates, their property and their drugs, and that they usually keep these photographs in their residences, places of business, and alternative storage locations with other drug-related documents.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

8. Carlos Andre SMITH has prior convictions for, among other things, Felony Distribution of Cocaine in 1991 in Virginia (Docket #075838V), Felony Escape in 1991 in Virginia (Docket #070536V), Felony Escape in 1991 in Virginia (Docket #076361V), Misdemeanor Assault in 1991 in Virginia (Docket #D788942), Misdemeanor Assault in 1991 in Virginia (Docket #070536V), Misdemeanor Assault in 1991 in Virginia (Docket #073501V), Eluding Police in 1999 in Virginia (Docket #W033192), Possession of Marijuana in 2001 in Virginia (Docket #770CR0000173200), Possession of Marijuana in 2001 in Virginia (Docket #770GC0000965700), Misdemeanor Assault in 2003 in Virginia (Docket #W085336), Felony Probation Violation in 2003 in Virginia (Docket #W085786), and Crack Cocaine Conspiracy and Possession of Firearm by Felon in 2006 in Federal court in Virginia. In the Federal case, SMITH was sentenced as an Armed Career Criminal and, after his release from the Bureau of Prisons, committed a Supervised Release Violation in 2017.

9. In July 2021, law enforcement in Virginia received information from an anonymous source of information (SOI) by phone that a person named "Carlos SMITH" was involved in the distribution of kilogram quantities of cocaine and that SMITH lives in Charlotte, North Carolina.

10. In early August 2021, law enforcement in North Carolina spoke with the same SOI by phone and received additional information regarding the cocaine trafficking activities of "Carlos SMITH" and his co-conspirators. The SOI stated the following:

a. SMITH currently lives near the "Big Al's Sports Bar" in Charlotte and his residence is on a "dead end" street.

b. SMITH had lost one of his legs during a motorcycle accident some time back.

c. SMITH and co-conspirators transport kilogram quantities of cocaine from the State of Texas into the States of Georgia, Illinois, and North Carolina. SMITH transports the cocaine in a tractor-trailer truck in which he makes frequent trips to Texas. SMITH previously operated a blue tractor and was recently assigned a new one, which is also blue.

d. The SOI provided law enforcement with a mobile phone number for SMITH.

11. The SOI's information is accurate in the following respects:

a. The investigative team queried a law enforcement database, which lists SMITH's address as 8045 Shiny Meadow Lane, Charlotte, North Carolina (the "Property to be Searched"). That is also his address according to records of the North Carolina Department of Motor Vehicles. The residence is located at the end of Shiny Meadow Lane in a cul-de-sac, at the end of the "dead end" street. Per Google Maps, the residence is approximately 3 miles away from "Big Al's Pub and Grubberia." The investigative team has conducted surveillance and observed SMITH at his 8045 Shiny Meadow Lane residence.

b. The investigative team conducted an NCIC Criminal History Records Check on SMITH. Among SMITH's criminal history and other identifiers, the document indicated that SMITH had a missing leg.

c. The investigative team conducted a law enforcement database query using SMITH's identifiers and found that, as recently as July 12, 2021, Carlos SMITH

drove a tractor-trailer with Illinois tag P991018. The investigative team then employed law enforcement investigative techniques using that tag number which provided a photograph of the tractor-trailer. The photograph showed the tractor was blue and had been in Texas.

    d. The investigative team confirmed that the number for SMITH provided by the SOI is in fact being used by SMITH.

12. The SOI said s/he observed SMITH in possession of a large quantity of cocaine and an amount of bulk United States currency inside his Charlotte residence (the "Property to be Searched") approximately two months ago.

13. Although information from an anonymous source must be considered with caution, the information provided has been corroborated to the extent possible. Thus, I concluded there is a sufficient basis for further investigation.

14. On September 20, 2021, the investigative team conducted a "trash pull" of refuse from the Property to be Searched that had been placed off of the premises for disposal. The investigative team seized packaging material, consistent with kilogram wrappings that contained a white powdery substance inside that appeared to be cocaine and field tested positive for cocaine base. The investigative team also seized mail with the address for the Property to be Searched.

*[The rest of this page is intentionally left blank.]*

## CONCLUSION

Based upon training, experience, and the facts of this investigation, I submit that there is probable cause to believe that the Items to be Seized, listed in Attachment C, will be found inside of 8045 Shiny Meadow Lane, Charlotte, North Carolina (the "Places to be Searched"), described in Attachment B; therefore, I request that the Court issue a warrant for the same.

/s/ M. Clint Bridges                              .
OFFICER M. CLINT BRIDGES
AFFIANT, TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

*AUSA Steven R. Kaufman has reviewed this Affidavit.*

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 22nd day of September, 2021, at 5:15 pm.

Signed: September 22, 2021

David C. Keesler
United States Magistrate Judge

## ATTACHMENT B
## Places to be Searched

The Place to be Searched is 8045 Shiny Meadow Lane, Charlotte, North Carolina, which is a two-story single family residence. The residence is depicted in the following photograph:



# ATTACHMENT C
## Items to be Seized

This Affidavit is made in support of this Application to seize the following items:

1. Books, papers, records, receipts, personal telephone/address directories, telephone billing records, notes, ledgers, documents, airline tickets, travel documents, and documentation of occupancy or ownership of premises.

2. Bank records, money orders, wire transfer records or receipts, financial instruments, financial transaction records, cashier's checks, traveler's checks, money drafts and related financial records, money wrappers, currency counting machines/devices.

3. United States or foreign currency, negotiable instruments, stocks, bonds, jewelry, precious metals, any lock type box and safes as to conceal or hide from view.

4. Property deeds, vehicle registrations or titles, and/or other items evidencing the obtainment, concealment, and/or transfer or expenditure of funds or currency.

5. Cameras, photographs, videotapes or other images, in particular images of assets, controlled substances, and/or co-conspirators.

6. Identification cards.

7. Cellular telephones, tablets, computers or other electronic devices used for record keeping of drug ledgers.

8. Packaging material, scales, presses, and other drug trafficking paraphernalia.

9. Weapons, including but not limited to firearms and ammunition

10. Controlled substances